## IN THE COURT OF COMMON PLEAS
## HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| ADRIAN BURTON<br>3924 Yearling Ct., Apt. 1B<br>Cincinnati, OH 45211 | ) )<br>)<br>) | CASE NO.<br><br>JUDGE: |
|           Plaintiff, | )<br>)<br>) | |
| v. | )<br>)<br>) | **COMPLAINT FOR DAMAGES<br>AND INJUNCTIVE RELIEF** |
| MEDPACE, INC.<br>5355 Medpace Way<br>Cincinnati, OH 45227 | )<br>)<br>)<br>) | **JURY DEMAND ENDORSED<br>HEREIN** |
| **Serve Also:**<br>Medpace, Inc.<br>c/o Stephen Paul Ewald (Stat. Agent)<br>5375 Medpace Way<br>Cincinnati, OH 45227 | )<br>)<br>)<br>)<br>) | |
|           Defendant. | )<br>) | |

Plaintiff Adrian Burton, by and through undersigned counsel, as her Complaint against the

Defendant, states and avers the following:

### PARTIES

1. Burton is a resident of the city of Cincinnati, Hamilton County, state of Ohio.

2. Defendant MEDPACE, INC. ("MedPace") is a domestic company that conducts business

   with the state of Ohio and the United States.

3. At all times referenced herein, MedPace was Burton's employer within the meaning of

   Title VII of the Civil Rights Act of 1964 ("Title VII") 42 U.S.C §2000e, the Americans

   with Disability Act ("ADA") 42 U.S.C. § 12101, and Ohio R.C. §4112 et seq.

### JURISDICTION & VENUE

4. All of the material events alleged in this Complaint occurred in or around Pike County, Ohio.

5. Therefore, personal jurisdiction is proper over Defendant pursuant to R.C. § 2307.382(A)(1), (3), and/or (4).

6. Venue is proper pursuant to Civ. R. 3(C)(1), (2), (3), and/or (6).

7. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

8. Within 300 days of the conduct alleged below, Burton filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC", Charge No. 473-2020-01098) against Defendant ("EEOC Charge").

9. On or about December 7, 2020, the EEOC issued and mailed a Dismissal and Notice of Rights letter to Burton regarding the EEOC Charge.

10. Burton received the Dismissal and Notice of Rights from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit 1.

11. Burton has filed this Complaint on or before the 90-day deadline set forth in the Dismissal and Notice of Rights.

12. Burton has properly exhausted all administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

13. Burton is a former employee of MedPace.

14. Burton is African American, a female/woman, and has diabetes, asthma, high blood pressure, and an eye injury (described *infra*), and thus is in protected class for her race, sex/gender, and disabilities, respectively.

15. Burton worked for Medpace as a security officer from October 1, 2019, until MedPace terminated Burton's employment on or about January 24, 2020.

16. Upon information and belief, Burton was replaced after her termination by an able-bodied Caucasian woman.

17. Burton started with Medpace via Whelan Security in or around July 2019.

18. Burton initially interviewed with Randy Aliff (security supervisor, Caucasian, left Medpace in or around August 2019), Chris Pfaf (facilities director, Caucasian), and Sarah Johnson (facilities manager, Caucasian).

19. Burton's early employment was overall positive, and she received her full-time hire to Medpace starting in October 2019.

20. In or around late September 2019, Elizabeth Gosian (facilities manager, Caucasian) took over as Burton's supervisor and James Christian (Caucasian, security supervisor) was hired.

21. In or around October 2019 while Burton was watching the security monitors, Gosian reported to Burton that she and Pfaf viewed Burton as overly "cocky" and that Medpace, as a result, may not be the best place for her to work.

22. Gosian also commented that Burton was good at her job, but that her cockiness was unappealing.

23. Gosian cited an example of Rob (LNU, Caucasian)'s hire to Burton.

24. During that process, Burton had commented at the time that she hoped that the new hire, whomever it may be, did not plan on sitting in the office all day doing nothing (meaning only watching the security monitors).

25. Sue Lynn Bradley (receptionist, Caucasian) and Ashley (LNU, receptionist, Caucasian) had evidently reported this information to Gosian.

26. On or about October 25, 2019, Mark (LNU, custodial manager, Caucasian) had his final day of work at Medpace – he purportedly resigned at that point due to bad interactions with the company.

27. Mark (LNU) had been overseeing Medpace's outsourced custodial staff (via Blue Chip) and was an equal opportunity manager for his subordinates.

28. The custodial staff was short that day, so Burton offered to help them during her downtime.

29. Mark (LNU) thanked her for the offer but told her to speak to her supervisor (Christian) first. Christian approved.

30. As Burton was helping the custodians, Bradley walked by and seemed unhappy that Burton was helping.

31. Gosian stopped by shortly after and asked what Burton was doing.

32. Burton said she had down time, and Gosian gave her a look, seemingly a "why help the help?" look, in response.

33. Burton did not mention she had permission to help from Christian at that time.

34. In or around November 2019 during the first snow of the season, Eric Vickers (third-shift security, Caucasian) was talking with Burton about the MDX (security's motor vehicle).

35. Before getting out the MDX, security is supposed to get the department's golf cart out of the shed to warm it up.

36. Vickers told Burton there was no need to warm up the MDX, so she did not, which upset Christian.

37. Christian said bringing out the MDX was part of Burton's job duties.

38. Burton asked why not have third-shift take it out since they're already on site and would be able to have it ready for first shift.

4

39. Christian mentioned that it was still Burton's job anyway.

40. Burton pushed back because of her asthma and how the cold causes problems with her breathing. Regardless, Burton said she'd figure it out and get it done going forward.

41. During that same conversation, Burton also asked Christian why she was the only African American security guard.

42. Burton said she didn't mean to imply that Medpace was refusing to hire African Americans, but she had brought up several people (all African American) as potential hires but none had been interviewed.

43. Christian responded by mentioning Donna (LNU), but Donna (LNU) is Caucasian.

44. Christian later brought up this question to Medpace's HR department who then reached out to Burton to discuss the hiring process. This was a protected discrimination complaint.

45. Later, Christian hired two African Americans into security and another Caucasian female, who, upon information and belief, was Burton's eventual replacement.

46. In or around mid-December 2019, Christian called the security cell phone.

47. Burton had the phone on her at the time and was in the restroom due to complications (nausea) from her diabetes medications.

48. Burton answered the call and Christian told her not to answer the company phone while in the restroom going forward.

49. Burton, later, received a negative performance evaluation from Medpace, which cited the MDX and her using the company phone in the restroom.

50. Notably, the same day as the negative evaluation, two Medpace employees had come to Burton and complimented her work.

51. On or about January 15, 2020, Burton was having further issues caused by her medications.

52. Burton recently had her dosage changed which led to increased nausea as a side effect. After she warmed up the MDX, she went to the restroom.

53. While in the restroom, Burton's son called her. Burton answered and said they'd speak during her next break.

54. A few hours later when Burton went on break, she spoke again with her son.

55. Later that day, Christian approached Burton and said she had been reported for using the phone in the restroom again.

56. Burton said that the calls were personal and not on the company phone, but Christian said taking calls at all was unprofessional.

57. Burton later went to HR and spoke with Lindsay Bradford (Caucasian).

58. Burton reported that she felt that Christian was targeting her personal phone use because of her race and sex/gender and reiterated her concerns about Medpace's hiring practices. This was another protected complaint of discrimination.

59. Bradford repeatedly asked what Burton wanted as a result of the complaint, but Burton didn't have any specific requests as she felt this was up to HR's discretion to act upon.

60. Because of the lack of other response, Burton mentioned she was considering resigning (but was not yet resigning) and would take Thursday (January 16, 2020) off for personal reasons.

61. Before Burton's shift on January 17, 2020, she received a terrible eye injury at home.

62. Burton called off work on the 17th and 18th for recovery and sent in her doctor's note via text message.

63. On or about January 21, 2020, Burton received an email from Brittany Beck (HR leave specialist) with information on the medical leaves Burton had available.

64. Burton had a follow-up appointment on or about January 24, 2020. After the appointment, she received a call from Christian.

65. Burton told Christian she was now officially cleared to return to work.

66. Christian appreciated that but Bradford needed to talk to Burton prior to returning to work.

67. Burton then spoke with Bradford, who terminated Burton's employment citing the use of her company phone while in the restroom.

68. Burton did not do this, so pushed back. The termination stood, and Burton returned her company equipment via Ayesha (LNU, security, African American) within the next few weeks.

69. Burton filed several complaints about discrimination at Medpace, both in the company's hiring practices and that she felt targeted by Christian because of her race.

70. Shortly after those complaints (within two months of the first complaint and weeks of the second), her employment was terminated.

71. Burton's employment was terminated just as she was cleared to return to work. This clearly demonstrates a discriminatory intent behind the termination.

72. Defendant's termination of Burton's employment was an adverse employment action against her.

73. Defendant's purported reason for Burton's termination was pretext.

74. Burton was actually discriminated against and terminated due to her race, her sex/gender, her disability, and/or was retaliated against due to her complaints of discrimination.

75. As a result of Defendant's acts and omissions, Burton has and continues to suffer damages.

## COUNT I: RACIAL DISCRIMINATION IN VIOLATION OF R.C. §4112, *et seq.*

76. Burton restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

77. Burton is African American, and thus is in a protected class for her race.

78. R.C. § 4112 *et seq.* provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's race.

79. Defendant treated Burton differently than other similarly situated employees based upon her race.

80. Defendant's purported reason for Burton's termination was pretext.

81. Defendant's termination of Burton was an adverse employment action against her.

82. Defendant actually terminated Burton's employment due to her race.

83. Defendant violated R.C. § 4112 *et seq.* by terminating Burton because of her race.

84. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by treating Burton differently from other similarly situated employees outside her protected class.

85. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by applying their employment policies in a disparate manner based on Burton's race.

86. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by applying their disciplinary policies in a disparate manner based on Burton's race.

87. Burton incurred emotional distress damages as a result of Defendant's conduct described herein.

88. As a direct and proximate result of Defendant's acts and omissions, Burton has suffered and will continue to suffer damages.

## COUNT II: RACIAL DISCRIMINATION IN VIOLATION OF TITLE VII

89. Burton restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

90. Burton is African American, and thus is in a protected class for her race.

91. Title VII provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's race.

92. Defendant treated Burton differently than other similarly situated employees based upon her race.

93. Defendant's termination of Burton was an adverse employment action against her.

94. Defendant's purported reason for Burton's termination was pretextual.

95. Defendant actually terminated Burton's employment due to her race.

96. Defendant violated Title VII by terminating Burton because of er race.

97. Defendant violated Title VII by treating Burton differently from other similarly situated employees outside her protected class.

98. Defendant violated Title VII by applying its employment policies in a disparate manner based on Burton's race.

99. Defendant violated Title VII by applying its disciplinary policies in a disparate manner based on Burton's race.

100. Burton incurred emotional distress damages as a result of Defendant's conduct described herein.

101. As a direct and proximate result of Defendant's acts and omissions, Burton has suffered and will continue to suffer damages.

## COUNT III: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. § 4112, *et seq.*

102.   Burton restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

103.   Burton is in a protected class for her and her family's disabilities (described *supra*).

104.   R.C. § 4112 *et seq.* provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's disabilities.

105.   Defendant treated Burton differently than other similarly situated employees based upon her disability.

106.   MedPace terminated Burton's employment.

107.   Defendant's purported reason for Burton's termination was pretext.

108.   Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by treating Burton differently from other similarly situated employees outside her protected class.

109.   Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by applying their employment policies in a disparate manner based on Burton' disability.

110.   Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by applying their disciplinary policies in a disparate manner based on Burton' disability.

111.   Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by constructively terminating Burton's employment.

112.   Burton incurred emotional distress damages as a result of Defendant's conduct described herein.

113.   As a direct and proximate result of Defendant's acts and omissions, Burton has suffered and will continue to suffer damages.

## COUNT IV: DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA

114.  Burton restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

115.  Burton is in a protected class for his disabilities.

116.  The ADA provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's disability.

117.  Defendant treated Burton differently than other similarly situated employees based upon her disability.

118.  Defendant violated the ADA by treating Burton differently from other similarly situated employees outside her protected class.

119.  Defendant violated the ADA by applying its employment policies in a disparate manner based on Burton's disability.

120.  Defendant violated the ADA by applying its disciplinary policies in a disparate manner based on Burton's disability.

121.  Burton incurred emotional distress damages as a result of Defendant's conduct described herein.

122.  As a direct and proximate result of Defendant's acts and omissions Burton based upon race discrimination, Burton has suffered and will continue to suffer damages.

## COUNT V: SEX/GENDER DISCRIMINATION IN VIOLATION OF R.C. 4112 et seq.

123.  Burton restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

124.  Burton, as a female/woman, is a member of a statutorily protected class based on her sex/gender under R.C. § 4112 et seq.

11

125.     Defendant had notice of Burton's sex/gender from her hire.

126.     Defendant treated Burton differently than other similarly situated employees based on her sex/gender.

127.     Defendant discriminated against Burton on the basis of her sex/gender throughout her employment with the company.

128.     Defendant terminated Burton's employment.

129.     Defendant's purported reason for Burton's termination is pretextual.

130.     Defendant actually terminated Burton's employment because of her sex/gender.

131.     Defendant violated R.C. § 4112.01 et seq. when they terminated Burton's employment based on her sex/gender.

132.     Defendant's discrimination against Burton based on her sex/gender violates R.C. § 4112 et seq.

133.     As a direct and proximate result of Defendant's conduct, Burton suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT VI: SEX/GENDER DISCRIMINATION IN VIOLATION OF TITLE VII

134.     Burton restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

135.     Burton, as a female/woman, is a member of a statutorily protected class based on her sex/gender under Title VII.

136.     Defendant had notice of Burton's sex/gender from early in her employment.

137.     Defendant treated Burton differently than other similarly situated employees based on her sex/gender.

138.    Defendant discriminated against Burton on the basis of her sex/gender throughout her employment with the company.

139.    Defendant terminated Burton's employment.

140.    Defendant's termination of Burton was an adverse employment action against her.

141.    Defendant's purported reason for Burton's termination is pretextual.

142.    Defendant actually terminated Burton's employment because of her sex/gender.

143.    Defendant's discrimination against Burton based on her sex/gender violates Title VII.

144.    Defendant violated Title VII when they terminated Burton's employment based on her sex/gender.

145.    As a direct and proximate result of Defendant's conduct, Burton suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT VII: RETALIATION

146.    Burton restates each and every prior paragraph of this complaint, as if it were fully restated herein.

147.    As a result of the Defendant's discriminatory conduct described above, Burton complained of the discrimination, sexual harassment, and disparate treatment she was experiencing.

148.    Subsequent to Burton's complaints to MedPace, Defendant took adverse employment actions against Burton, including, but not limited to, terminating her employment.

149.    Defendant's actions were retaliatory in nature based on Burton's opposition to the unlawful discriminatory conduct.

150.    Pursuant to R.C. § 4112 et seq., Title VII, and the ADA, it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice.

151.    As a direct and proximate result of Defendant's retaliatory discrimination against and discharge of Burton, she has suffered and will continue to suffer damages.

**DEMAND FOR RELIEF**

WHEREFORE, Burton demands from Defendant the following:

a)  Issue a permanent injunction:

    i.   Requiring Defendant to abolish discrimination, harassment, and retaliation;

    ii.   Requiring allocation of significant funding and trained staff to implement all changes within two years;

    iii.   Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

    iv.   Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

    v.   Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

b) An award against Defendant for compensatory and monetary damages to compensate Burton for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

c) An award of punitive damages against Defendant in an amount in excess of $25,000;

d) An award of reasonable attorneys' fees and non-taxable costs for Burton's claims as allowable under law;

e) An award of the taxable costs of this action; and

f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

/s/ Matthew G. Bruce
Matthew Bruce (0083769)
        Trial Attorney
Evan R. McFarland (0096953)
THE SPITZ LAW FIRM, LLC
Spectrum Office Tower
11260 Chester Road, Suite 825
Cincinnati, OH 45246
Phone: (216 291-0244 x173
Fax:    (216) 291-5744
Email: Evan.McFarland@SpitzLawFirm.com
Email: Matthew.Bruce@spitzlawfirm.com

Attorneys for Plaintiff Adrian Burton

## **JURY DEMAND**

Plaintiff Adrian Burton demands a trial by jury by the maximum number of jurors permitted.

/s/ Matthew G. Bruce
Matthew Bruce (0083769)